IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
ROCKFORD DIVISION

| | |
|---|---|
| X-CALIBER FUNDING LLC, as servicer for XCAL 2019-IL-1 MORTGAGE TRUST, a New York trust,<br><br>                Plaintiff,<br>v.<br><br>MARK B. PETERSEN,<br><br>                Defendant. | Case No. 3:26-CV-50016<br><br>Judge Iain D. Johnston |

## VERIFIED COMPLAINT

Plaintiff X-Caliber Funding LLC in its capacity as servicer for U.S. Bank, N.A., as trustee of XCAL 2019-IL-1 MORTGAGE TRUST ("Plaintiff") files this Verified Complaint for breach of contract against Mark B. Petersen ("Defendant").[1] Plaintiff alleges as follows.

## NATURE OF THE CASE

1. Defendant guaranteed a $40 million loan made by Plaintiff to borrower entities of which Defendant was the principal. Pursuant to the guaranty, Defendant "irrevocably, absolutely and unconditionally guarantee[d] to Lender the full, prompt and complete payment when due" of all amounts due under the loan. The borrowers defaulted on the loan and, as a result thereof, Plaintiff accelerated the loan and demanded payment from Defendant under the guaranty. As of January 30, 2026, at least $19,113,624.68 was due, owing, and payable to Plaintiff under the

---

[1] This case was transferred to the Court by the United States District Court for the Southern District of New York. Plaintiff files this Complaint in response to the Court's minute entry Document No. 77.

134272686

guaranty. Despite the unconditional nature of the guaranty, Defendant has failed to pay any portion of the indebtedness.

## PARTIES

2. Plaintiff is servicer for U.S. Bank, N.A., a national banking association, as trustee of the XCAL 2019-IL-1 MORTGAGE TRUST, established under the laws of New York.

3. Defendant Mark Petersen is a resident of Illinois.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because it is a civil action between citizens of various States within the United States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this District.

## FACTS

**A.    The Underlying Loan Agreement.**

6. On or about October 31, 2019, El Paso HCC, LLC; Flanagan HCC, LLC; Kewanee AL, LLC; Knoxville AL, LLC; Legacy Estates AL, LLC; Marigold HCC LLC; Monmouth AL LLC; Polo LLC (collectively, the "Bridge Loan Owner Borrowers") and El Paso HCO, LLC; Flanagan HCO, LLC; CYE Kewanee HCO, LLC; CYE Knoxville HCO, LLC; Legacy HCO, LLC; Marigold HCO, LLC; CYE Monmouth HCO LLC; Polo HCO, LLC (collectively, the "Bridge Loan Operator Borrowers") and Plaintiff entered into: that certain Loan Agreement, as amended by that certain Amendment to Loan Agreement and Other Loan Documents and Reaffirmation dated as of March 23, 2020 (as supplemented, modified, amended, restated or replaced from time to time, "Original Bridge Loan Agreement"). The Original Bridge

134272686

2

Loan Agreement was amended and restated by that certain Amended and Restated Loan Agreement dated as of February 24, 2021 (as supplemented, modified, amended, restated or replaced from time to time, the "Bridge Loan Agreement"), and in connection therewith, Plaintiff, Bridge Loan Owner Defendants and Bridge Loan Operator Defendants also entered into that certain (a) Amendment to Loan Documents and Reaffirmation dated as of February 24, 2021 (the "1st Amendment to Bridge Loan Documents"), (b) Second Amendment to Loan Documents and Reaffirmation dated as of November 6, 2022 (the "2nd Amendment to Bridge Loan Documents"), and (c) Third Amendment to Loan Documents and Reaffirmation dated as of November 13, 2023 (the "3rd Amendment to Bridge Loan Documents"). A true and correct copy of the Bridge Loan Agreement is attached hereto as Exhibit A. True and correct copies of the 1st Amendment to Bridge Loan Documents, 2nd Amendment to Bridge Loan Documents, and 3rd Amendment to Bridge Loan Documents are attached hereto as Group Exhibit B.

7. Pursuant to the Bridge Loan Agreement, Plaintiff provided Bridge Loan Owner Borrowers and Bridge Operator Borrowers a term loan in the original principal amount of Forty Million and No/100 Dollars ($40,000,000) (the "Bridge Term Loan" and together with all other obligations owed under the Loan Agreement, the "Bridge Loan Obligations").

8. In connection with the Bridge Loan Agreement, Bridge Loan Owner Defendants and Bridge Loan Operator Defendants each executed that certain Promissory Note in the original principal amount of $40,000,000 dated as of October 31, 2019 (the "Bridge Loan Note").

9. The Loan Agreement provides that "[t]he Loan, the Note, the Loan Documents, and/or [X-Caliber's] rights, title, obligations and interests therein may be assigned by [X Caliber] and any of its successors and assigns to any Person at any time in its discretion, in whole or in

part...." Loan Agreement § 10.21.

10. The Bridge Loan Note was assigned by X-Caliber Funding LLC to X-Caliber Depositor LLC and thereafter to U.S. Bank, as trustee. A true and correct copy of the Bridge Loan Note and the assignments thereof are attached hereto as Group Exhibit C.

**B.  The Guaranty.**

11. In connection with the Loan Agreement, in or around April 2022, Defendant executed an Amended and Restated Guaranty and Security Agreement (the "Guaranty") in favor of Plaintiff. A true and correct copy of the Guaranty is attached hereto as Exhibit D.[2] Pursuant to the Guaranty, Defendant "irrevocably, absolutely and unconditionally guarantee[d] to Lender the full, prompt and complete payment when due" of "all obligations and liabilities of [the] Borrower[s] in connection with the Loan." *Id.* §§ 2(a), (b).

12. Defendant agreed "to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, that may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this Guaranty." *Id.* § 18(b).

13. Guarantor agreed that "[a]ll sums payable to Lender under this Guaranty shall be payable on demand and without reduction for any offset, claim, counterclaim *or defense*." *Id.* § 2(b) (emphasis added).

14. Section 6(a) of the Guaranty provides, in relevant part:

> The obligations of Guarantor hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, ... or any setoff, counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against

---

[2] The Guaranty provides that it "shall be governed by, and construed in accordance with, the substantive laws of the State of New York." Guaranty § 10.

> Guarantor by Lender or constitute a legal or equitable discharge or defense of a guarantor or surety. Lender may enforce the obligations of Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or any deficiency action against Borrower or any other Person at any time, either before or after an action against the Property or any part thereof, Borrower or any other Person. This Guaranty is a guaranty of payment and performance and not merely a guaranty of collection.

*Id.* § 6(a).

15. Guarantor "expressly and irrevocably waive[d] all defenses in an action brought by Lender to enforce this Guaranty based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise." *Id.* § 6(c).

16. Guarantor agreed that his obligations under the Guaranty "shall not be in any way affected by ... any insolvency, bankruptcy, liquidation, [or] reorganization ... involving or affecting [the] Borrower[s]...." *Id.* ¶ 6(b)(i).

17. Guarantor agreed that:

> At the option of [X-Caliber], [Petersen] may be joined ... in any independent action or proceeding against [Petersen] to the extent of [Petersen's] liability hereunder, without any requirement that [XCaliber] first assert, prosecute or exhaust any remedy or claim against Borrower or any other Person, or any security for the obligations of Borrower or any other Person.

*Id.* § 6(h).

**C.    Events of Default Occur Under the Loan Agreement and Defendant Fails to Honor the Guaranty.**

18. Events of Default occurred under the Loan Agreement in or around December 2023 based on, *inter alia*, the Borrowers' breaches of Section 5.37 and 6.2 of the Loan Agreement.

19. As a result of the Events of Default, on December 29, 2023, Plaintiff sent

Borrowers and Guarantor a Notice of Default, wherein Plaintiff accelerated the Loan and demanded payment in full of then outstanding obligations, which totaled $34,486,93.91, plus additional fees, costs and interest that continues to accrue on the Loan. A true and correct copy of the Notice of Default is attached hereto as <u>Exhibit E</u>.

20. Borrowers and Guarantor failed to pay the full outstanding balance in response to Plaintiff's demand (nor any portion thereof), and failed to make any principal payments under the Loan Agreement since December 2023, which failures constitute additional Events of Default under the Loan Agreement, and material breaches of the Guaranty.

**D.** **Borrowers' Illinois Receivership and Delaware Bankruptcy Filing.**

21. As a result of the Events of Default and breaches, on January 23, 2024, Plaintiff initiated an action against the Borrowers for foreclosure and enforcement of security interests before this Court in the case captioned *X-Caliber Funding LLC, as servicer for XCAL 2019-IL-1 Mortgage Trust, v. El Paso HCC, LLC et al.*, Case No. 3:24-cv-50034 (the "<u>Receivership Action</u>").

22. On January 24, 2024, this Court appointed Michael F. Flanagan as receiver for Borrowers ("<u>Receiver</u>"). Receivership Action, Doc. No. 8.

23. On March 20, 2024, Borrowers filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Case</u>"). Defendant did not file and has not filed for bankruptcy protection.

24. Borrowers certified in the Bankruptcy Case the reasons for their bankruptcy filings as follows:

> As a result of the downward market pressures and trends in the elder care space, inflationary pressures from food, drugs and medical supplies, difficulty recruiting

> experienced staff, and lingering effects of COVID-19, the Debtors faced liquidity issues and subsequently fell into default with their various credit facilities. Given the Debtors' need to continue providing care to their residents, the Debtors, in consultation with their advisors, deemed it necessary to forego principal and interest payments owed to their lenders and ensure that critical resident care continue. Any lapse in operation, no matter how transitory, would have a devastating impact on the Debtors' resident care (thereby becoming a public health concern) and also on the going concern value of the Debtors' business. As these defaults mounted, receivership cases were filed, and the Debtors' liquidity issues worsened. The filing of these Chapter 11 cases became necessary after the Debtors' existing lenders declined to provide additional financing.

*See* ¶ 21 of Borrowers' Declaration, a true and correct copy of which is attached hereto as <u>Exhibit F</u>.

25. Borrowers further acknowledged that it became apparent that they would need a restructuring of their obligations "prior to the receiverships." *Id.* ¶ 42.

26. Borrowers and Plaintiff reached an agreement in the Bankruptcy Case for Receiver to continue operating Borrowers' facilities during the Bankruptcy Case. Receivership Action, Doc. No. 40.

27. On October 30, 2024, Illinois Debt Acquisition Company, L.L.C. ("<u>IDAC</u>") was substituted as plaintiff in the Receivership Action following its purchase of certain obligations under the Bridge Loan Agreement. *Id.*, Doc. Nos. 53 and 65.

28. In the Receivership Action, Defendant filed a motion to intervene, replace Receiver and for leave to file claims against Receiver elsewhere and this Court denied Defendant's motion. Receivership Doc. Nos. 81 and 112.

29. Defendant's objections to the sale of Borrowers' assets were also denied by this Court in the Receivership Action. Receivership Action, Doc. No. 151.

30. This Court entered an order approving the sale of Borrowers' assets to IDAC on November 20, 2025 for the sale price of $18,150,000 (the "<u>Purchase Price</u>"). Receivership

Action, Doc. Nos. 129 and 152.

E.   **The New York Breach of Guaranty Litigation.**

31.   On June 11, 2024, Plaintiff initiated this action in the Supreme Court of the State of New York, County of New York, Index. No. 652958/2024 (the "NY State Court Action") using the New York procedure for a motion for summary judgment in lieu of complaint pursuant to CPLR 3213.

32.   On July 22, 2024, Defendant removed the NY State Court Action to the United States District Court for the Southern District of New York, Case No. 1:24-cv-5529 (the "NY Federal Court Action").

33.   In the NY Federal Court Action, Plaintiff's motion for summary judgment was converted to a motion for summary judgment under Federal Rule of Civil Procedure 56 (the "NY Summary Judgment Motion"). NY Federal Court Action, Doc. No. 13.

34.   Defendant thereafter filed counterclaims against Plaintiff (the "Counterclaims") and third-party claims (the "Third-Party Claims") against Joseph C. Tutera, Walnut Creek Management, L.L.C., and IDAC (collectively, the "Third-Party Defendants").

35.   Plaintiff filed a motion to dismiss the Counterclaims and Third-Party Defendants filed a motion to dismiss the Third-Party Claims (collectively, the "Motions to Dismiss"). NY Federal Court Action, Doc. Nos. 49 and 54.

36.   Ultimately, the NY Federal Court Action was transferred to this Court in January 2026 while the Motions to Dismiss and the NY Summary Judgment Motion were pending.

F.   **Damages.**

37.   In connection with its purchase of the loan, IDAC assigned the claims under the

Guaranty to Plaintiff. A true and correct copy of the Guarantor Claims Assignment and Assumption Agreement (the "Guaranty Assignment") is attached hereto as Exhibit G.

38. As of the time of Guaranty Assignment, the amount outstanding under the Guaranty was at least $37,263,624.68, plus fees and costs.

39. Following the sale of Borrowers' assets to IDAC, the amount outstanding under the Guaranty was reduced by the $18,150,000 Purchase Price to $19,113,624.68, plus fees and costs and interest accruing since October 11, 2024 (the date of the Guaranty Assignment).

40. As of February 9, 2026, at least $19,113,624.68 is due and outstanding under the Guaranty, which amount is exclusive of interest since October 11, 2024, fees and costs.

41. As of the date of this filing, Defendant has failed to uphold his payment obligations under the Guaranty and has made no payment thereon.

## COUNT I – BREACH OF CONTRACT – GUARANTY

42. Plaintiff realleges and incorporates by reference the preceding paragraphs 1-41 as if set forth fully herein.

43. The Guaranty constitutes a valid and binding obligation of Defendant for the benefit of Plaintiff.

44. Plaintiff has duly performed all terms and conditions of the Guaranty.

45. Defendant has breached the Guaranty by failing to pay Plaintiff the amounts due under the guaranty.

46. As a result of Defendant's failure to pay the amounts owed under the Guaranty, Plaintiff has sustained damages in the amount of $19,113,624.68, which amount is exclusive of interest since October 11, 2024, fees and costs and additional amounts to be determined at trial.

WHEREFORE, Plaintiff respectfully requests judgment be entered in its favor and against Defendant, and that this Court grant Plaintiff the following relief:

(a) enter judgment on Count I in Plaintiff's favor, in an amount not less than $19,113,624.68, plus all pre-judgment and post-judgment interest, fees and costs, and such other relief as the Court deems equitable and just; and

(b) award Plaintiff such other and further relief as the Court may deem equitable, just and proper.

[Signatures on Following Page]

Dated: February 9, 2026

Respectfully submitted,

*/s/ Paige B. Tinkham*
Kenneth J. Ottaviano
Ken.Ottaviano@blankrome.com
Paige B. Tinkham
Paige.Tinkham@blankrome.com
Garrison Ambrose
Garrison.Ambrose@blankrome.com
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Tel: 312.776.2500

*Counsel for Plaintiff*

134272686

## **VERIFICATION**

I, Jeff Deines, as a Vice President of X-Caliber Funding LLC certify under penalty of perjury that the statements contained in the foregoing Complaint are true based upon my personal knowledge and my review of the relevant documents of X-Caliber Funding LLC.

Signed under the pains and penalties of perjury this 9th day of February, 2026.

_____

Jeff Deines

134272686